**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 09-cv-02329-WJM-KLM

ERIC CHRISTOPHER PROVENCIO,

    Plaintiff,

v.

C. STARK, and
D. RODENBECK,

    Defendants.

---

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff, an federal prisoner, brings this action against Defendants, two correctional officers, alleging that Defendants used excessive force against him in violation of the Eighth Amendment. Before the Court is Defendants' Motion for Summary Judgment. (ECF No. 134.) For the reasons set forth below, Defendants' Motion for Summary Judgment is denied.

## I. BACKGROUND

**A.**     **Factual Background**

The following undisputed facts are taken from the record:[1]

---

[1] Plaintiff's Response fails to admit or deny, in correspondingly numbered paragraphs, facts set forth in Movant's Statement of Material Facts section, as required by the Court's Practice Standard III.E.5. Therefore, material facts set forth by Defendants that are not directly contradicted by Plaintiff's Statement of Facts are deemed admitted for the purpose of assessing the Motion for Summary Judgment. *See Rose v. City of Lafayette*, No. 05-cv-00311, 2007 WL 485228, at *1 (D. Colo. Feb. 12, 2007) (where Plaintiff "did not provide a response to the Defendants' statements of undisputed facts," the Court "accept[ed] the facts as set forth in the Defendants' briefs as undisputed, except to the extent that [the Court] can determine the existence of a genuine dispute raised in the response brief.").

Plaintiff Eric Christopher Provencio has been a federal prisoner at the United States Penitentiary-Administrative Maximum facility ("ADX") since August 11, 2006. (Schaffer Decl. ¶ 9, attached to Defs' Motion, Ex. 1.) Defendants David Rodenbeck and Chad Stark serve as correctional officers and as General Maintenance Worker Supervisors at the ADX.[2] (Stark Decl. ¶¶ 9, 10, attached to Defs' Motion, Ex. 3; Rodenbeck Decl. ¶¶ 4, 5, attached to Defs' Motion, Ex. 2.) Both Defendants do general maintenance and supervise prisoner work crews in the ADX. (*Id.*) Both Defendants also regularly perform correctional officer duties, including, but not limited to, escorting prisoners, conducting searches, completing prisoner population counts, and delivering meals. (*Id.*)

The Special Housing Unit ("SHU") is a specialized housing unit at ADX where two categories of inmates are typically housed: (1) inmates who are subject to administrative detention; and (2) inmates who are subject to disciplinary segregation. (Schaffer Decl. ¶¶ 4-5, 10.) Since Plaintiff was transferred to the ADX, he has been housed primarily in the SHU. (*Id.* ¶ 10.)

At the time of the events in question, October 10, 2007, Plaintiff was housed in the SHU on disciplinary segregation. (*Id.* ¶¶ 18-20.) On that day, the ADX Warden ordered a mass search of the cells in the SHU. (Rodenbeck Decl. ¶ 6; Stark Decl. ¶ 11.) Each inmate was escorted to individual recreational cells on the range to wait until the search of his cell was completed. (Stark Decl. ¶ 13.) After correctional officers

---

[2] Every employee of the United States Bureau of Prisons ("BOP") serves as a correctional officer and is expected to assist in correctional activities. (Rodenbeck Decl. ¶ 5; Stark Decl. ¶ 10.)

completed searching the cell level where Plaintiff was housed, Defendants were directed to escort Plaintiff back to his cell from the recreation area. (Stark Decl. ¶ 14; Rodenbeck Decl. ¶ 9.)

At approximately 9:40 a.m., Defendants arrived at the recreational holding cell where Plaintiff was being held. (*Id.* ¶ 18; *Id.* ¶ 12.) Defendant Stark then placed Plaintiff's wrists in hand restraints, and Plaintiff and Defendants proceeded down the range back to Plaintiff's cell. (*Id.* ¶¶ 18, 19; *Id.* ¶¶ 12, 13.)

Immediately after Plaintiff and Defendants entered the sallyport[3] area of Plaintiff's cell, there was a verbal exchange between Plaintiff and Defendant Stark that lasted a few seconds. (Dep. of E. Provencio, 26:24-27:9.) After this verbal exchange, a physical altercation ensured between Plaintiff and Defendants. (Stark Decl. ¶¶ 21-24; Dep. of E. Provencio, 26:24-29:24.) There is a dispute of fact as to whether Defendants or Plaintiff initiated this physical altercation. (*Id.*)

According to Wilmer Haygood, a Correctional Counselor at the ADX, he ran into Plaintiff's cell after he observed Plaintiff attempting to kick and head butt Defendant Stark. (Haygood Decl. ¶ 10, attached to Defs' Motion, Ex. 24.) Counselor Haygood ran into the cell while Plaintiff and Defendant Stark were falling to the ground. (*Id.*)

A videotape from a stationary camera in the SHU hallway shows that Plaintiff and Defendants entered the sallyport of Plaintiff's cell at 9:42:57 a.m. (Schaffer Decl. ¶ 41.) The videotape then shows Counselor Haygood entering the cell five seconds later at 9:43:02 a.m. (*Id.* ¶ 42.) According to Plaintiff, there was no unlawful or excessive

---

[3] The cells in the ADX SHU are divided into two areas. (Stark Decl. ¶ 20.) The first, smaller area that faces onto the range is known as the sallyport. (*Id.*)

force used against Plaintiff after Counselor Haygood entered the cell. (Dep. of C. Provencio, 31:21-25, 32:1-2, 33:3-18.)

Jose Arroyo, another Correctional Counselor at the ADX, entered the cell after Counselor Haygood. (Arroyo Decl. ¶¶ 10-11, attached to Defs' Motion, Ex. 25.) Counselor Arroyo observed Plaintiff yelling and trying to kick and roll. (*Id*.) It appeared to Arroyo that Plaintiff was attempting to get out of the hold the correctional officers had on him, and wanted to kick Defendant Stark. (*Id*.)

After Plaintiff was placed in leg restraints, Defendant Stark left the cell and Plaintiff was assisted in standing up. (Rodenbeck Decl. ¶ 18.) Defendant Rodenbeck, along with other correctional officers, then escorted Plaintiff to the medical station in the SHU to be evaluated. (*Id*. ¶ 19.) Plaintiff was treated for minor contusions and a 1.5-inch to 2-inch laceration on his upper head, which was cleaned and closed with seven staples by BOP medical personnel. (Dep. of E. Provencio, 43:1-44:9; HealthServices 000065, 000230, attached to Pl's Resp., Ex. B.) Plaintiff also sustained a sprained medial collateral ligament in his left knee. (*Id*.)

**B.     Procedural History**

Plaintiff filed his Complaint in this action on September 30, 2009. (ECF No. 3.) Plaintiff brings one claim against Defendants, in their individual capacities, for use of excessive force in violation of the Eighth Amendment. (*Id*.)

On November 18, 2011, Defendants filed a Motion for Summary Judgment ("Motion") pursuant to Federal Rule of Civil Procedure 56 on Plaintiff's excessive force claim. (ECF No. 134.) In addition to arguing the lack of a genuine issue of material

facts and entitlement to judgment in their favor as a matter of law, in this filing Defendants also assert that they are entitled to qualified immunity. (*Id.*) On January 2, 2012, Plaintiff filed a Response in Opposition to Defendants' Motion (ECF No. 145), and on January 26, 2012, Defendants filed a Reply in Support of their Motion (ECF No. 150).

The Motion is now ripe for resolution.

## II. LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or, conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248-49 (1986); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable juror could return a verdict for either party. *Anderson*, 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Quaker State Mini-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995); *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

The moving party bears the initial burden of showing an absence of evidence to

support the nonmoving party's case. *Celotex*, 477 U.S. at 325. Where the non-movant bears the burden of proof at trial, the non-movant must then point to specific evidence establishing a genuine issue of material fact with regard to each challenged element. *See Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002); *In re Ribozyme Pharms., Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002).

### III. ANALYSIS

**A.      Plaintiff's Excessive Force Claim**

Defendants argue that they are entitled to summary judgment because the force they used on Plaintiff was not excessive and did not rise to the level of cruel and unusual punishment in violation of the Eighth Amendment.

Excessive force claims in the prison setting are generally analyzed under the Eighth Amendment's prohibition against cruel and unusual punishment. *See Smith v. Cochran*, 339 F.3d 1205, 1210 n.2 (10th Cir. 2003). The Eighth Amendment encompasses an inmate's "constitutional right to be secure in her [or his] bodily integrity and free from attack by prison guards." *Id.* at 1212 (internal quotation marks and citation omitted). To assert an Eighth Amendment claim, a plaintiff must satisfy a two-prong test: (1) that the deprivation suffered or the conduct challenged was "objectively 'sufficiently serious,'" and (2) that the defendant had a sufficiently culpable state of mind or was "deliberately indifferent" to the inmate's safety. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).

Under the objective component of the Eighth Amendment, a plaintiff must show that he was subjected to official conduct or physical force that rose to the level of cruel

and unusual punishment because "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action." *Martin v. Creek Cnty. Jail*, No. 10-cv-0699, 2010 WL 4683852, at *4 (N.D. Okla. Nov. 12, 2010) ("The Eighth Amendment prohibition . . . necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.").

To satisfy the subjective component of the Eighth Amendment test, a plaintiff must allege sufficient facts to show that a defendant had the culpable state of mind known as "deliberate indifference," which requires a higher degree of fault than negligence or gross negligence. *See Berry v. City of Muskogee*, 900 F.2d 1489, 1495-96 (10th Cir. 1990) (citation omitted). "When no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind." *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997).

In the excessive force context, the first, objective component examines the nature and extent of the force used in light of contemporary standards of decency. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The central issue under the objective prong, however, is not whether the inmate suffered serious injury, but the nature and purpose of the force--whether the forced used under the circumstances shows that it "was applied . . . maliciously and sadistically to cause harm." *See Wilkins v. Gaddy*, __ U.S. __, 130 S. Ct. 1175, 1179 (2010).

The Court finds that there is a genuine dispute of fact as to whether Defendants

used excessive force on Plaintiff that rose to the level of cruel and unusual punishment. Evidence has been submitted that could be construed, in the light most favorable to Plaintiff, as showing that: (1) Defendant Stark made racial comments to Plaintiff and then "smashed [Plaintiff's] head right into the metal bar door frame" (Dep. of C. Provencion Dep., 21:10-24, 26:23-27:15); and (2) both Defendants rammed Plaintiff's head into a concrete wall before tackling him to the floor, driving a knee into his back, and "continuously over-excessively ripp[ing] on [Plaintiff's foot] and twist[ing] it." (*Id*. at 28:20-29:24). According to Plaintiff's sworn testimony, this attack was unprovoked and caused him injuries from which he still suffers today. (*Id*. at 27:16-28:4; 43:1-44:9.) A reasonable jury could find that Defendants actions, as described by Plaintiff, were malicious and sadistic, and constitute excessive force. *See Lowe v. Sockey*, 36 F. App'x 353, 357-58 (10th Cir. 2002) (finding a genuine issue of material fact as to whether officials used excessive force when a prisoner alleged that the officials picked a fight with him and struck him while he was restrained on the floor); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (finding a genuine issue of material fact when a reasonable jury could find that guards' behavior was malicious and sadistic when they beat him and shouted racial epithets at him while he was restrained on the ground).

Defendants contend that the video of the SHU range contradicts Plaintiff's testimony because it undisputedly shows that the incident in Plaintiff's cell lasted only five seconds, as opposed to a "three-to-four-minute" assault that Plaintiff described at his deposition. (Schaffer Decl. ¶¶ 41, 42; Dep. of C. Provencio, 31:21-25, 32:1-2,

33:3-18, 44:13-25, 45:1-5, 56:17-24.)  In substance, Defendants argue that the video conclusively establishes that Plaintiff's version of the events at issue here simply could not have taken place.  Thus, Defendant's contend, the video in effect eliminates any genuine issue of material  fact from this case. (Defs' Motion (ECF No. 134) at 15, 28; Defs' Reply (ECF No. 150) at 1-3, 6-11.)

Defendants are correct that, as a general matter, in the context of a Rule 56 motion a court need not view the facts in the light most favorable to the non-moving party when there is clear and contrary video evidence of the incident at issue.  *See Scott v. Harris*, 550 U.S. 372, 378-80 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *see also Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009).  However, when such video evidence does "not capture everything . . ., in addition to relying on the video," a court must "also continue to view the evidence in the light most favorable to [the non-moving party]." *Thomas v. Durastanti*, 607 F.3d 655, 659 (10th Cir. 2010) (citing *York v. City of Las Cruces*, 523 F.3d 1205, 1210-11 (10th Cir. 2008) (applying *Scott* to an audiotape of the challenged incident)).[4]

Here, the video evidence shows Defendants escorting Plaintiff into his cell, and

---

[4] Here, as in *Scott* and *Thomas*, "[t]here are no allegations or indications that [the] videotape" of the incident in question "was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened." *Scott*, 550 U.S. at 378.

then shows Correctional Counselor Haygood entering the cell five seconds later. (Schaffer Decl. ¶¶ 41, 42.)  It is undisputed that any alleged use of excessive force ended when Haygood entered the cell.  (Dep. of C. Provencio, 31:21-25, 32:1-2, 33:3-18.)  Therefore, there is no genuine dispute of fact regarding the length of time of the alleged assault--no reasonable jury could believe that any alleged excessive force lasted more than five seconds.

Significantly, however, the video evidence in this case does *not* show any portion of the incident that occurred inside of Plaintiff's cell.  Defendants argue that it is physically impossible for the verbal harassment and physical assault that Plaintiff describes to have occurred over a five second period.  While a jury may well agree with Defendants that Plaintiff's version of the incident is not credible, particularly since he's on the record estimating that the incident lasted "three-to-four minutes," a reasonable jury could also find it possible that the alleged use of excessive force did in fact occur over a five second period.[5]  Therefore, the Court must continue to view the evidence in the light most favorable to Plaintiff, and given the crucial limitation in the content of the video evidence in this case, the Court concludes a genuine material dispute of fact continues to exist regarding whether Defendants used excessive force on Plaintiff.  *See Thomas*, 607 F.3d at 659.

Based upon the evidence described above, and other evidence set forth in the

---

[5] The video evidence here is a far cry from the video evidence in *Scott*, where the video showed the entire incident related to Plaintiff's excessive force claim.  *See Scott*, 550 U.S. at 379-81 ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.").

summary judgment briefs, a jury could reasonably find that Defendants used excessive force on Plaintiff, force which rose to the level of actionable cruel and unusual punishment. As a consequence, Plaintiff's excessive force claim and Defendants' Motion for Summary Judgment is denied.

**B.     Qualified Immunity**

Defendants also argue that they are entitled to qualified immunity on Plaintiff's Eighth Amendment excessive force claim. When a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff who must meet a heavy two-part burden. *See Maestas v. Lujan*, 351 F.3d 1001, 1006-1007 (10th Cir. 2006). The plaintiff must first establish that the defendant's actions violated a constitutional or statutory right. *Id.* If the plaintiff establishes a violation of a constitutional or statutory right, he must then demonstrate that the right at issue was clearly established at the time of the defendant's unlawful conduct such that a reasonable person in defendant's position would have known that his conduct violated that right. *See Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer [in the defendant's position] that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

The Court finds that Defendants are not entitled to qualified immunity in this case. "[I]t was clearly established in June 2007 that prison officials cannot inflict injury where they act, not in a good faith effort to maintain and restore discipline, but maliciously and sadistically for the very purpose of causing harm." *Adams v. Bouchard*,

591 F. Supp. 2d 1191, 1205 (W.D. Okla. 2008) (citing *Hudson v. McMillian*, 503 U.S. 1 (1992); *Whitley v. Albers*, 475 U.S. 312 (1986)).  Moreover, reasonable prison officials in Defendants' position should or would have understood that they were violating Plaintiff's constitutional rights by maliciously and sadistically attacking Plaintiff in the manner alleged above.  *See Saucier*, 533 U.S. at 202.

Viewing the facts in the light most favorable to Plaintiff, Defendants' alleged conduct, if proven at trial, violated Plaintiff's clearly established constitutional right to be protected from malicious and sadistic actions. In addition, the Court has little difficulty finding that it would be clear to a reasonable officer in the Defendant's position that this conduct, as alleged, was unlawful. *Saucier,* 533 U.S. at 202. As a consequence, Defendants are not entitled to qualified immunity on Plaintiff's Eighth Amendment excessive force claim.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendants' Motion for Summary Judgment (ECF No. 134) is DENIED; and
2. Plaintiff's excessive force claim shall proceed to trial on January 28, 2013.

Dated this 19th day of July, 2012.

BY THE COURT:

William J. Martínez
United States District Judge